IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MARK MURFIN, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-CV-1077-WDS |
| | ) | |
| ST. MARY'S GOOD SAMARITAN, | ) | |
| INC., *an Illinois not-for-profit corporation*, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

**STIEHL, District Judge:**

Before the Court is plaintiff Mark Murfin's complaint for injunctive and other relief (Doc. 2, Ex. 1). Plaintiff, a physician, can no longer treat patients at St. Mary's Hospital because defendant St. Mary's Hospital, Centralia, Illinois,[1] revoked his hospital privileges after an incident between plaintiff and two nurses. The Court previously questioned whether subject-matter jurisdiction exists and ordered the parties to brief the matter. They have done so (Docs. 28 & 29). Plaintiff finds that subject-matter jurisdiction is lacking, since his claims are based on state law, while defendant believes the complaint contains an express federal claim as well as state-law claims that turn on substantial federal questions.

Plaintiff Mark Murfin is a physician licensed in Illinois, and defendant St. Mary's Hospital, Centralia, Illinois, is an Illinois not-for-profit corporation that operates St. Mary's Hospital. For many years, plaintiff was a member of the physicians' consulting medical staff of St. Mary's with hospital privileges to see and treat patients there.

Plaintiff had a dispute with two nurses at St. Mary's. According to defendant, plaintiff yelled at one of the nurses, poking her repeatedly in the chest and pushing her against the wall. The nurses filed written occurrence reports with management at St.

---

[1] Defendant was misnamed in the complaint. Its correct name is *St. Mary's Hospital, Centralia, Illinois*.

Mary's. Management then submitted a request for a formal investigation or corrective action. A meeting of the Medical Executive Committee took place to consider the request. Afterward, plaintiff was told that the Committee recommended he attend counseling for anger management, issue a letter of apology to the two employees, and that he accept a 30-day suspension of his hospital privileges. Plaintiff informed the Committee that he accepted its recommendations. The next day, the Board of Directors met and voted to terminate plaintiff's staff privileges at St. Mary's altogether. Plaintiff was not informed of (or given the opportunity to attend) the Board's meeting. He was notified later of the Board's decision. Plaintiff demanded a hearing before the ad hoc committee of physicians with respect to the Committee's recommendation of a 30-day suspension of his hospital privileges. Defendant denied a hearing.

Plaintiff claims that defendant's actions violated its own bylaws and credentials manual as well as state and federal law. He believes that defendant's actions are causing him irreparable personal and professional harm, including his ability to practice medicine in Marion County, Illinois, and that he has no adequate remedy at law. In addition to damages, plaintiff seeks preliminary and permanent injunctions (1) enjoining defendant from enforcing the revocation of plaintiff's hospital privileges at St. Mary's, (2) ordering defendant to provide him with written notice of the adverse action and a hearing before a physician's committee, and (3) enjoining defendant from reporting any revocation of plaintiff's hospital privileges to the National Practitioner Data Bank.

This case was removed under 28 U.S.C. § 1441(a) (Doc. 2). Defendant believes original jurisdiction exists because plaintiff's federal claims arise under the laws of the United States. *See* 28 U.S.C. § 1331. Although plaintiff did not raise the issue on a motion to remand, a district court's "first duty in every suit" is to establish the existence of subject-matter jurisdiction. *Johnson v. Wattenbarger*, 361 F.3d 991, 992 (7th Cir. 2004); *accord Krueger v. Cartwright*, 996 F.2d 928, 930–31 (7th Cir. 1993).

A defendant's removal of a case to district court is proper if the lawsuit could have been filed in federal court originally. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts have federal-question jurisdiction "of all civil actions arising under the Constitution, laws, and treaties of the United States." 28 U.S.C. § 1331. Under the well-pleaded complaint rule, jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392; *accord Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986). A defense that raises a federal question, however, does not create federal-question jurisdiction. *E.g.*, *Merrell Dow*, 478 U.S. at 808; *Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1003 (7th Cir. 2012). A federal question is presented on the face of the complaint where the plaintiff pleads either (1) a claim created by federal law or (2) a state-law claim that implicates significant federal issues, i.e., a claim recognized under state law but that "nonetheless turn[s] on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

Defendant first suggests that the Court has federal-question jurisdiction because plaintiff alleges on the face of his complaint a violation of his rights under the Health Care Quality Improvement Act of 1986 ("HCQIA"), 42 U.S.C. §§ 11101–52. Plaintiff's complaint is not divided into counts with separate legal claims in each count. His allegations primarily sound in breach of contract (defendant's bylaws and credentials manual). But he also states that (1) "pursuant to 42 U.S.C. § 11112, a suspension or restriction of clinical privileges in excess of fourteen (14) days may not be imposed in the absence of a finding of immediate danger to the health of an individual," (2) "[t]he actions of Defendant in revoking Plaintiff's hospital privileges was … in violation of Plaintiff's rights to a fair hearing and other common law rights and as set forth in … 42 U.S.C. § 11111, et seq.," and (3) he is seeking an injunction to stop defendant "from reporting said purported revocation to the National Practitioner Data Bank" (Doc. 2, Ex. 1, ¶¶ 23–26). The National Practitioner

Data Bank ("NPDB") is part of the HCQIA. *See* 42 U.S.C. § 11133(a); 45 C.F.R. § 60.1.

Although plaintiff refers to those sections of the statute, the plain text shows he was not entitled to a hearing or other relief under the HCQIA. For example, the hearing procedures in § 11112(a) are only "[f]or purposes of the protection set forth in section 11111(a)," which is the immunity provision. *See Bok v. Mut. Assurance, Inc.*, 119 F.3d 927, 929 n.1 (11th Cir. 1997) ("There clearly is no express cause of action in the legislation."). Further, it is well established that the HCQIA does not create a cause of action for physicians when a hospital chooses not follow the HCQIA's peer-review procedures. *See Hancock v. Blue Cross-Blue Shield of Kan., Inc.*, 21 F.3d 373, 374–75 (10th Cir. 1994); *Bok*, 119 F.3d at 928–29 (no express or implied cause of action); *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1148 (8th Cir. 1998); *Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 45 n.18 (1st Cir. 2002); *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2008) (no express cause of action); SCOTT M. SMITH, CONSTRUCTION AND APPLICATION OF HEALTH CARE QUALITY IMPROVEMENT ACT OF 1986, 121 A.L.R. FED. 255 § 9. District courts in this circuit have come to the same conclusion. *See Held v. Decatur Mem. Hosp.*, 16 F.Supp.2d 975, 1220 (C.D. Ill. 1998) ("Plaintiff has not cited, and this court has not found, any cases reaching a contrary result."); *Shelton v. Schneiter*, No. 05 C 5955, 2005 WL 3601934, at 3 (N.D. Ill. Nov. 2, 2005); *Rosenberg v. Advocate Health and Hosps. Corp.*, No. 11 C 2493, 2011 WL 1548391, at *3 (N.D. Ill. April 22, 2011).

Plaintiff seeks an injunction to stop defendant from reporting the revocation of his privileges to the NPDB. But an injunction is a remedy, not a claim or cause of action. A request for an injunction cannot confer subject-matter jurisdiction. *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980); CHARLES ALAN WRIGHT, *ET AL.*, 11A FED. PRAC. & PROC. CIV. § 2941 (2d ed.) ("Rule 65 does not confer either subject-matter or personal jurisdiction on the court."); *see also Califano v. Yamasaki*, 442 U.S. 682, 705 (1979). There must be a substantive claim.

Thus, because there is no cause of action for physicians under the HCQIA, the Court cannot enjoin defendant from reporting to the Board of Medical Examiners or the NPDB under § 11133(a). *See Goldsmith v. Harding Hosp., Inc.*, 762 F.Supp. 187, 190–91 (S.D. Ohio 1991) (holding that to recognize an implied cause of action for a physician seeking "to enjoin the reporting of adverse action required by the statute [HCQIA] … would also work against the congressional intent to mandate and encourage reporting.").

Without a cause of action, it is unlikely that plaintiff pleads a claim that arises under federal law. "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow*, 478 U.S. at 808; *accord Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748–49 (2012); *Am. Well Works Co. v. Layne and Bowler Co.*, 241 U.S. 257, 260 (1916) (Holmes, J.) ("A suit arises under the law that creates the cause of action.").

Defendant proposes that jurisdiction may exist, with or without a federal cause of action, based on plaintiff's complaint. In *McCready v. White*, the Seventh Circuit found federal jurisdiction secured even though the plaintiff did not have a federal cause of action. 417 F.3d 700, 702–03 (7th Cir. 2005). There, the plaintiff brought a claim in federal court that "rest[ed] entirely on federal law," the Driver's Privacy Protection Act of 1994. *Id.* at 702. Whether he had a substantively valid claim did not negate jurisdiction. *Id.* The court of appeals explained that a cause of action under federal law is not essential to jurisdiction, as the Supreme Court clarified in *Grable*. *Id.* at 702–03.

Similarly, in *Bell v. Hood* the Supreme Court found federal jurisdiction where the plaintiffs were seeking recovery in federal court under the Fourth and Fifth Amendments. 327 U.S. 678, 679 (1946). The defendants moved for dismissal, contending (1) that the plaintiffs only had a cause of action under state law (trespass), and (2) that the Constitution did not provide for money damages. As to the cause of action, the Court wrote, "It cannot be doubted … that it was the pleaders' purpose to make violation of these Constitutional

5

provisions the basis of this suit. Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States." *Id.* at 681. Even if the complaint is drawn in that way, though, it may be dismissed where the alleged claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* at 682–83. On whether the Constitution provided for money damages, the Court held that jurisdiction was not defeated "by the possibility that the averments might fail to state a cause of action on which [the plaintiffs] could actually recover." *Id.* at 682. The Court distinguished between failure to state a cause of action, which is judgment on the merits, and dismissal for lack of jurisdiction. *Id.*

In both *McGready* and *Bell*, the plaintiffs brought claims in federal court that were clearly based on federal law—in *McGready*, "entirely," 417 F.3d at 702; in *Bell*, "the sole basis of the relief sought," 327 U.S. at 683. This case was removed here from state court, however, and, judging from the way the complaint was drawn, the Court finds that plaintiff's claims are not clearly based on federal law, even though he cites sections of the HCQIA. He does not explicitly state his causes of action, but he primarily alleges that defendant breached its bylaws and credentials manual. Federal law is not the sole basis of the relief sought. What is more, the plaintiffs in *McGready* and *Bell* presented issues of first impression, 417 F.3d at 702; 327 U.S. at 683–84, or, as the Sixth Circuit put it, "novel arguments for new federal causes of action that arise under federal law," *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 588 (6th Cir. 2013). Here, plaintiff's potential federal claims are not issues of first impression or novel. If anything, they come close to being wholly insubstantial and frivolous inasmuch as federal courts have found the HCQIA lacking a cause of action for physicians for over 20 years. *See, e.g.*, *Goldsmith*, 762 F.Supp. at 188–91.

6

The Court therefore finds that it lacks jurisdiction over this case unless one of plaintiff's state-law claims implicates significant federal issues. *See Hancock*, 21 F.3d at 374 (affirming district court's dismissal of case brought under the HCQIA for lack of subject-matter jurisdiction); *Held*, 16 F.Supp.2d at 978.

Defendant argues that plaintiff's state-law claims raise two issues: (1) Whether federal law requires defendant to submit a report to the NPDB such that it cannot be enjoined from doing so, and (2) whether plaintiff, in seeking damages for breach of contract or violation of the Hospital Licensing Act, can establish that defendant is *not* entitled to immunity under the HCQIA. The Court has already discussed the first issue; an injunction is only a remedy, not a substantive claim (federal or state). Therefore, only the second issue remains.[2]

There is not a sole test for determining whether state-law claims afford a basis for federal-question jurisdiction. The Supreme Court holds that they must "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *accord Chi. Tribune Co.*, 680 F.3d at 1004; *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007).

Defendant believes that plaintiff's claims seeking damages from its peer-review action necessarily raise a stated federal issue. Defendant correctly notes that immunity is presumed under the HCQIA and that plaintiff bears the burden of proving an absence of immunity. *See* 42 U.S.C. § 11112(a) ("A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence."); *Sugarbaker v. SSM Health Care*, 190 F.3d 905, 912 (8th Cir. 1999). Defendant, therefore, concludes that plaintiff's claims necessarily raise federal issues because plaintiff must estab-

---

[2] Moreover, defendant says the second issue is the "overwhelming and primary basis" for jurisdiction.

lish the absence of immunity as an essential element of his claims.

The Court disagrees. Qualified immunity is an affirmative defense. *E.g.*, *Harris v. Bellin Mem'l Hosp.*, 13 F.3d 1082, 1085 (7th Cir. 1994). Plaintiff could establish breach of contract or violation of Illinois law without reference to the HCQIA. It is still black-letter law that a federal defense does not give rise to federal jurisdiction. *E.g.*, *Merrell Dow*, 478 U.S. at 808. "*Grable* does not alter the rule that a potential federal defense is not enough to create federal jurisdiction under § 1331." *Chi. Tribune Co.*, 680 F.3d at 1003. There is not an exception for defenses that create a presumption. Accordingly, the Court finds that it lacks subject-matter jurisdiction.

Further, plaintiff's claims do not necessarily raise a stated federal issue. There are many other issues in this case. Plaintiff might not make out a prima facie case for breach of contract, for example. And defendant raises a variety of defenses, including that it was not a proximate cause of any injury to plaintiff, that its conduct was privileged, and that plaintiff has released his claims (Answer to Complaint, Doc. 19, pp. 14–15). Plaintiff also seeks injunctive relief—he wants written notice, a hearing, and reinstatement of his physician's privileges—and injunctive relief is not affected by the HCQIA's immunity provision. *See Poliner v. Tex. Health Sys.*, 537 F.3d 368, 381 (5th Cir. 2008) ("Congress limited the reach of immunity to money damages. The doors to the courts remain open to doctors who are subjected to unjustified or malicious peer review, and they may seek appropriate injunctive and declaratory relief in response to such treatment."); *Sugarbaker*, 190 F.3d at 918.

In contrast to the many issues in this case, in *Grable* the federal issue, whether the IRS had provided adequate notice to the plaintiff as defined by federal law, "appear[ed] to be the only legal or factual issue contested in the case." *Grable*, 545 U.S. at 315. The Court therefore finds that plaintiff's claims do not necessarily raise issues of federal law because there are many issues here and he seeks relief other than damages. *See Chi. Tribune Co.*, 680 F.3d at 1004 ("A state court therefore might rule in the [defendant's] favor wholly as a

8

matter of state law—which suggests that the federal issue not only is not "necessarily" presented, but may never be presented at all, rendering a federal court's decision nothing but an advisory opinion."); *Bennett*, 484 F.3d at 910 ("We have a fact-specific application of rules that come from both federal and state law rather than a context-free inquiry into the meaning of a federal law. State issues, such as the amount of damages, may well predominate.").

Nor is the federal issue in this case actually disputed and substantial. Plaintiff alleges that he was harmed by defendant's peer-review actions. Defendant believes this is a substantial issue because it involves the application and effect of the HCQIA's immunity provision, and because of the strong federal interest in promoting meaningful peer review to protect patients. The Court acknowledges that plaintiff's claims for damages *involve* HCQIA immunity. And the Court would not doubt that the federal interest is important. That is not enough, though, for the "special and small category" of cases that implicate federal law under *Grable*. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The law in *Grable* implicated a federal tax provision, and the dispute involved the actions of a federal agency, the IRS. *Id.* Further, resolution of the question would be dispositive of the case and control numerous other cases. *Id.* Here, there is no federal agency involved. The immunity question will not be dispositive of this case, since there are other issues. And whether defendant's peer-review actions met the standard set out in the HCQIA will not control any other cases. Thus the Court does not find that this case presents a substantial federal issue. *See Bennett*, 484 F.3d at 910–11 (noting that the plaintiffs were not challenging a federal agency's or employee's action).

Defendant offers several reasons why the exercise of federal jurisdiction in this case would not disturb any congressionally approved balance of federal and state judicial responsibilities. It contends that medical-staff-privilege cases constitute only a tiny percentage of state-court dockets, and not all physicians seek damages, so exercising jurisdic-

tion here would not open the floodgates to federal-court litigation. Defendant does not support those assertions. In fact, almost all the states have enacted a peer-review immunity statute, which suggests otherwise. *See* Nathaniel H. Hwang, *Defaming a Physician's Career: The Double Edged Sword of Peer Review Privilege and Immunity*, 25 J. LEGAL MED. 95, 101 (March 2004). Moving along though, defendant believes Congress passed the HCQIA to address an important national problem, namely, incompetent and unprofessional physicians, and consequently the federal courts were intended to have some responsibility to entertain challenges to peer-review actions. Defendant adds that federal courts should interpret the HCQIA to maintain consistency, i.e., prevent the law from becoming balkanized by courts from 50 states. But it would be fair to say every law passed by Congress seeks to address an important national problem. As to consistency, state courts apply federal laws all the time. *See, e.g.*, *Hays v. Cave*, 446 F.3d 712, 714 (7th Cir. 2006) ("[T]here is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions; otherwise there would be no field called 'conflict of laws' and no rule barring removal of a case from state to federal court on the basis of a federal defense.").

In *Grable*, at issue was a federal tax provision. The Supreme Court described it as "an important issue of federal law that sensibly belongs in federal court," because the Government "has a strong interest in the prompt and certain collection of delinquent taxes." *Grable*, 545 U.S. at 315 (internal quotation omitted). Not only did the issue involve a federal tax provision, it involved the actions of the IRS. So the Government had a "direct interest in the availability of a federal forum to vindicate its own administrative action." *Id.* By that standard, this Court does not find that an immunity defense to damages claims under state law is an important issue of federal law that sensibly belongs in federal court. Whether plaintiff here is entitled to damages is not on par with the federal government's ability to collect taxes, and does not involve a federal agency. It would therefore disturb the congressionally approved balance of federal and state judicial responsibilities to exer-

cise federal jurisdiction here.

Accordingly, the Court **FINDS** that it lacks subject-matter jurisdiction in this matter. This case is **REMANDED** to the Circuit Court of the Fourth Judicial Circuit in Marion County, Illinois.

**IT IS SO ORDERED.**

**DATED: April 17, 2013**

                                            **/s/ WILLIAM D. STIEHL**
                                                **DISTRICT JUDGE**